IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:07-cr-74-WSD |
| PHILLIP MARION CARY, | |
| Defendant. | |

## OPINION AND ORDER

This matter is before the Court on Defendant Phillip Marion Cary's ("Defendant") Objections ("Objections") [57] to the Magistrate Judge's Final Report and Recommendation ("R&R") [54] issued by Magistrate Judge Russell G. Vineyard on Defendant's Preliminary Motion to Dismiss Indictment [25], Perfected Motion to Dismiss Indictment [30] ("Dismissal Motions"), Motion to Suppress Statements ("Statement Suppression Motion") [21], Motion to Suppress Illegally Seized Evidence [22], Motion to Suppress Identification Evidence [23], and Perfected Motion to Suppress Illegally Seized Evidence [28] (collectively, "Evidence Suppression Motions").

Defendant's motions consist of conclusory arguments challenging the indictment returned against him and all the evidence gathered in the investigation.

His Objections are even more cursory than the original motions, simply disagreeing with the conclusions reached in the R&R and incorporating the arguments from his motions.

In the Dismissal Motions, Defendant argues that the indictment is defective. 18 U.S.C. § 922(g)(9) prohibits a person convicted of a "misdemeanor crime of domestic violence" from possessing a firearm. Defendant claims the battery he was convicted of in Georgia courts was not "domestic."

In the Evidence Suppression Motions, Defendant contends that the search warrant issued by the magistrate judge was invalidly executed because it lacked particularity. Defendant also argues that his post-arrest statements should be suppressed because they were taken in violation of <u>Miranda</u>.

Finally, Defendant argues his identification by photographic array was unduly suggestive and thus inadmissible.

## I.     BACKGROUND

An February, 2007 investigation by ATF Special Agent James Taylor Booth ("Booth") into the Defendant's alleged purchase of a firearm and ammunition at Southeastern Public Safety ("SPS"), a business in DeKalb County, disclosed that Defendant acquired from SPS a 12-gauge shotgun, 90 rounds of ammunition, and

other gun accessories on January 24, 2007. SPS is a federal firearms licensee. An SPS employee informed Booth that Defendant had filled out federal paperwork for the purchase of the firearm on that date, in which he allegedly made false representations concerning his criminal history. Booth's investigation revealed that Defendant had, around that time, shown to others a shotgun stored in the trunk of a blue Chevrolet. A search of DeKalb County court records disclosed that Defendant had a previous conviction for simple battery in a domestic relations context.[1]

Booth determined that Defendant resided at 3865 Cardinal Drive in Tucker, Georgia ("Cardinal Drive residence"), and that Alice Smith Cary, who also resided at that address, had a blue 1998 Chevrolet Celebrity registered in her name at that address. Based on this information, Booth, assisted by ATF Agent Walter Shaw ("Shaw"), drafted an affidavit and exhibits and applied to this court for warrants to arrest the Defendant and to search the Cardinal Drive residence.

---

[1] The government charges that Defendant committed battery against a person in a domestic relationship with Defendant, as defined in 18 U.S.C. § 921(a)(33).

On February 9, 2007, Magistrate Judge Scofield issued the warrants after reviewing the affidavit and exhibits prepared jointly by Booth and Shaw.[2] Defendant was arrested after he departed the Cardinal Drive residence in a blue Chevrolet Celebrity. The car was stopped by law enforcement officials and Defendant was taken into custody.

At some point after the arrest, Booth advised Defendant that he had been arrested on firearms-related charges. In response to this advisement, Defendant asked Booth, "This is about that shotgun, isn't it?" Booth had not asked Defendant any questions or given Defendant his <u>Miranda</u> warnings prior to Defendant's statement. After the statement, <u>Miranda</u> warnings were given. Defendant acknowledged understanding his rights, but agreed to waive them and speak with Booth. Defendant offered to show Booth where he could find the shotgun. Booth declined the offer, but asked about any dangerous conditions in the house. Defendant answered that there was a dog on the premises, that the shotgun was located on one of the beds, and that a handgun was on the couch in the garage. Defendant was then transported to the DeKalb County Police Department, placed

---

[2] A more complete description of the execution of the warrants is provided in the Report and Recommendation at pages 10-15.

in an interview room, and released from his handcuffs. Defendant ceased to make voluntary statements and demanded an attorney. Law enforcement officers did not ask Defendant any questions after he demanded a lawyer.

The search of the Cardinal Drive residence was supervised by Shaw, while Booth handled the arrest, transportation, and interview of Defendant. During the search, Shaw possessed a copy of the search warrant, but did not have a copy of the affidavit and supporting exhibits. Shaw located the firearms listed in the affidavit.

After Defendant was booked, Booth and another ATF official prepared a photographic array to show to the SPS employee who had stated that Defendant purchased a shotgun. The array contained a picture of Defendant, as well as photographs selected by an automated computer system. The computer selected photographs with a generally similar appearance to Defendant, on the basis of height, weight, hairstyle, and facial hair. A law enforcement official chose five photographs from those selected by the computer, and presented them to the SPS employee in an array with Defendant's photograph. From this array, the SPS employee immediately identified Defendant as the purchaser of the shotgun. Later, the SPS employee was again presented with the array, and again identified Defendant.

## II. STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specify proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(c). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. 1609, 94th Cong., § 2 (1976)). With respect to those findings and recommendations to which the Defendant has not asserted objections, the Court must conduct a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

Defendant has not objected to the facts set forth in the Report and Recommendation. In the absence of an objection and having reviewed the facts for plain error, the Court adopts the findings of fact in the Report and Recommendation.

### III. DISCUSSION

    A.    <u>Motions to Dismiss</u>

18 U.S.C. § 922(g)(9) applies when a defendant possesses a firearm who has previously committed a "misdemeanor crime of domestic violence." Defendant argues that the indictment is defective on this count because his 1996 Georgia conviction for simple battery does not, on its face, contain a domestic relationship as an element. This argument misapprehends the law.

Under § 921(a)(33), the term "misdemeanor crime of domestic violence" is defined to have two elements: (1) the crime must have been a misdemeanor; and (2) the crime has:

> as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33).

The second requirement is composed of two distinct parts: (a) that the misdemeanor crime have as an element the "use or attempted use of physical force,

or the threatened use of a deadly weapon; and (b) that the misdemeanor crime was committed by someone in a qualifying domestic relationship with the victim. A domestic relationship does not need to be an element of the prior misdemeanor; rather, the existence of such a relationship at the time of the misdemeanor is a separate factual element under § 922(g)(9). United States v. Griffith, 455 F.3d 1339, 1341 (11th Cir. 2006).

The Defendant may argue at trial that he was not in a qualifying domestic relationship with the victim he battered. The existence of this potential defense does not, however, require the dismissal of a facially proper indictment. For these reasons, and those set forth in the R&R, Defendant's Objection to the R&R's findings on the Motions to Dismiss is overruled.

    B.    <u>Motions to Suppress</u>

        1.    *Search warrant*

            a.    *Particularity*

By incorporating the same arguments he made to the Magistrate Judge, Defendant continues to claim that the search warrant lacks particularity. Specifically, Defendant contends that the officers who executed the warrant had not "read the attachments" to the warrant or had the attachments read to them.

Defendant claims, in essence, that the search process was constitutionally defective and any evidence seized during it must be suppressed because Shaw and the officers working under him did not have a physical copy of the attachments to the warrant, and the attachments were not read to them prior to the search.

Defendant does not contest that the affidavit supporting the warrant application was specifically referenced in, and incorporated as part of, the warrant. Defendant has not identified any particular item seized in the search that was beyond the scope of the warrant or the list of items discussed in the supporting affidavit.

"The Fourth Amendment, by its terms, requires particularity in the warrant, not in the supporting documents." Groh v. Ramirez, 540 U.S. 551, 557 (2004). Cross-referencing is, however, permitted, and the Eleventh Circuit has held that a warrant can be made sufficiently particular by physically attaching supporting affidavits. United States v. Weinstein, 762 F.2d 1522, 1531-32 (11th Cir. 1985).

The Eleventh Circuit has not addressed whether documents that are specifically incorporated by, but not physically attached to, the warrant, can be used to satisfy the particularity requirement. A majority of circuits require that: "a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of

reference which incorporates the affidavit therein." United States v. Strand, 761 F.2d 449, 453 (8th Cir. 1985). The Fourth and Sixth Circuits, however, hold that "it is sufficient *either* for the warrant to incorporate the supporting document by reference *or* for the supporting document to be attached to the warrant itself." United States v. Hurwitz, 459 F.3d 463, 471 (4th Cir. 2006); Baranski v. Fifteen Unknown ATF Agents of the Bureau of ATF, 452 F.3d 433, 447 (6th Cir 2006) (en banc).

The Court has reviewed the application for the search warrant and the affidavit submitted in support of the warrant application. The warrant, taken with its specifically incorporated attachments, is particular, detailed, and more than adequately supports probable cause to conduct the search described in the warrant.

Shaw conducted the search in this case with a copy of the warrant in his possession, but without a physical copy of the affidavit and other attachments. The contents of the affidavit were not read to Shaw. Shaw, however, assisted Booth with generating the warrant application, affidavit, and exhibits, and it is undisputed that Shaw was intimately familiar with the contents of the attachments.

The R&R declined to address the particularity issue, in light of the absence of Eleventh Circuit guidance and the availability of the good-faith exception. The

10

Court, however, finds that the Eleventh Circuit has provided sufficient guidance to address the particularity argument.  In United States v. Wuagneux, 683 F.2d 1343, 1351 n.6 (11th Cir. 1982), the court found that a warrant which did not have its affidavit attached was nonetheless sufficiently particular when the agent who generated the affidavit was "present and had previously explained the contents of the affidavit to the agents and given them an opportunity to read it."  Id.  The court noted:

> The requirement that the affidavit be incorporated by and attached to the warrant is intended to insure that both the searchers and the person whose premises are to be searched are informed of the scope of the searchers' authority. Although self-restraint by searching officers, by itself, may not cure an overbroad warrant, we conclude that in this case the searchers were adequately informed of the limitations on the search given their instruction by Agent O'Dea, their opportunity to read the affidavit, and its presence at the search site.

Id.

Under the specific facts of this case, the Court concludes that the search was valid even though the affidavit was not attached to the warrant.  The warrant incorporated the affidavit.  Shaw, who assisted with generating the affidavit and was familiar with its contents, supervised the search and explained its contents to the officers under him.  Shaw and the agents at his command were, due to Shaw's

11

involvement with generating the affidavit, well informed of the authorized scope of the search. Booth, who had possession of the affidavit, could be reached easily by phone if Shaw or anyone else participating in the search had questions. Shaw's knowledge of the contents of the affidavit is corroborated by the fact that Defendant does not allege that any items beyond the scope of the warrant or affidavit were seized.

            b.     *Good Faith Exception*

Even if the warrant were not sufficiently particular, the fruits of the search would be admissible under the good faith exception. See United States v. Leon, 468 U.S. 897 (1984). "[T]he exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in objectively reasonable reliance on the warrant and the warrant was issued by a detached and neutral magistrate." United States v. Maxwell, 920 F.2d 1028, 1034 (D.C. Cir. 1990). The good-faith exception does not apply "where, depending of the circumstances of the particular case, a warrant is so facially deficient–i.e., in failing to particularize the place to be searched or the things to be seized–that the executing officers cannot reasonably presume it to be valid. United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002). When the

failure of particularity is the result of the absence of an affidavit, courts focus on whether the officer omitted the affidavit and whether the search was conducted within the scope of the items to be seized. United States v. Stefonek, 179 F.3d 1030, 1035-36 (7th Cir. 1999). In other words, where the violation of the particularity requirement "can be shown to have had no causal relation to the scope of the search of to the quantity or character or evidence seized, suppression of the evidence is not a proper sanction." Id.

The warrant's attachments, in the unique facts of this case, were effectively in the hands of the officers who conducted the search even though not physically attached to the warrant that was executed. Shaw had intimate knowledge of the scope of the affidavit and the limitations on the search it imposed. The facts show that he, and the officers working with him in the search, honored those limitations. The absence of the affidavit did not affect the nature or scope of the search conducted. Defendant's Objection to the search warrant is overruled.

    2.    *Statements*

        a.    *Pre-Miranda Statements*

Defendant claims that statements he made after he was arrested and while seated in a patrol car were the result of an "interrogation" in violation of his

Miranda rights. Defendant contends that when Booth told him he was being arrested for having a prior conviction for possessing a firearm, the advisement of the charges was the functional equivalent of an interrogation.

An officer engages in the "functional equivalent" of interrogation when he engages in "words or actions . . . (other than those normally attend to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301(1980). Statements that are "unsolicited, spontaneous, and freely made prior to any attempted interrogation" are not the result of custodial interrogation. Sullivan v. State of Alabama, 666 F.2d 478, 482 (11th Cir. 1982) (quotation and citation omitted). "[A] police arrest or seizure [is not, by itself] so coercive as to transform a situation into one of functional interrogation." United States v. Glen-Archila, 677 F.2d 809, 815 (11th Cir. 1982). "Advising a suspect about the charges after [he] specifically requests such information has never been construed to be the functional equivalent of interrogation." United States v. Springfield, No. CR406-390, 2007 WL 1140912,*3 (S.D. Ga., Apr. 13, 2007); Enoch v. Gramley, 70 F.3d 1490, 1500 (7th Cir. 1995).

Here, Agent Booth simply advised Defendant of the charges against him. This statement was not the functional equivalent of custodial interrogation. Defendant, in response, offered the unsolicited, spontaneous, and freely made statement that "this is about the shotgun." For this reason, and those stated by the Magistrate Judge in the R&R, Defendant's Objections to R&R's findings concerning suppression of his pre-Miranda statements is overruled.

      b. *Post-Miranda Statements*

Defendant apparently contends that because his pre-Miranda statements were given in violation of his Miranda rights, his post-Miranda statements also are inadmissible. The Court has found that the pre-Miranda statements are admissible because they were not the product of an interrogation. Any statements thus made after Miranda warnings were given are admissible. Defendant's Objection to the recommendation that his post-Miranda statements not be suppressed is overruled.

     3. *Photographic Identification*

Defendant restates his argument that the photographic array presented to the SPS employee was impermissibly suggestive and violated his due process rights.

Identification procedures violate a defendant's due process rights if they are unreliable. Marsden v. Moore, 847 F.2d 1536, 1545 (11th Cir. 1988). The test for

15

unconstitutional unreliability asks two questions: "(1) whether the original identification procedure was unduly suggestive; and, if so, (2) whether the suggestive procedure, given the totality of the circumstances, created a substantial risk of misidentification at trial." Id. See also, Dobbs v. Kemp, 790 F.2d 1499, 1596 (11th Cir. 1986). Courts examine the size of the photographic array, the manner of its presentation, and the details of the photographs to determine suggestiveness. United States v. Wiseman, 172 F.3d 1196, 1208-09 (10th Cir. 1999).

The Magistrate Judge held a hearing on the array in which he received testimony about how the array was compiled and used. He also reviewed the array himself and determined that the array was not suggestive.

The Court has reviewed the array, and agrees with the Magistrate Judge. The array contained six photographs, which is an acceptable size not indicative of suggestiveness. See United States v. Bennett, 409 F.2d 888, 898 (2d Cir. 1969). The array was presented to the SPS employee on two occasions in a neutral and unbiased manner. The R&R found as a matter of fact that the SPS employee was not coerced or given any undue guidance or suggestions in his identification.

The photographs were randomly selected by a computer program from a group of the photographs of people with generally similar characteristics and features as Defendant. The computer was directed not to select photographs with distinctive markings such as tattoos, piercings, or scars, that might distinguish the subject from the Defendant easily. A law enforcement agent then chose five photographs from those selected by the computer and added a photograph of Defendant to create the array actually presented to the SPS employee. The photographs are black and white. This process is fairly objective, and not indicative of suggestiveness.

Defendant's Objection regarding the photographic array is overruled.

### III.   CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** the R&R [54] and incorporates it as part of this Order and Opinion.

**IT IS FURTHER ORDERED** that Defendant Phillip Marion Cary's Objections to the Magistrate Judge's Report and Recommendation [57] are **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendant's Preliminary Motion to Dismiss Indictment [25], Perfected Motion to Dismiss Indictment [30], Motion to Suppress Statements [21], Motion to Suppress Illegally Seized Evidence [22], Motion to Suppress Identification Evidence [23] and Perfected Motion to Suppress Illegally Seized Evidence [28] are **DENIED**.

**SO ORDERED** this 4th day of January, 2008.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE