IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:07-cr-74-WSD |
| PHILLIP MARION CARY, | |
| Defendant. | |

## OPINION AND ORDER

This matter is before the Court on the Defendant Phillip Marion Cary's ("Defendant") Motion in Limine [64] to exclude the testimony of five (5) government witnesses who would all testify regarding the Defendant's motive for purchasing the shotgun at issue in this case.  The government contends evidence of the Defendant's motive for purchasing the gun is probative of whether the Defendant "knowingly possessed" the firearm.  Defendant contends the evidence is not probative of any relevant issue in the case and, even if it was, the testimony is unduly prejudicial and should be excluded under Rule 403 of the Federal Rules of Evidence.

I.     **FACTUAL BACKGROUND**

Defendant is charged with illegal possession of a firearm.  The indictment specifically alleges that, after having been convicted of a misdemeanor crime of domestic violence,[1] Defendant, on or about January 24, 2007, knowingly possessed a firearm that had traveled in interstate commerce.  See 18 U.S.C. § 922(g)(9).

On February 27, 2008, Defendant moved to exclude certain categories of evidence proposed to be introduced by the government at trial.  This evidence specifically includes witness testimony, and documents (including police reports and protective orders) referring to witness statements, a police report referring to Defendant's alleged harassment of a DeKalb County police officer, and the results of a search by law enforcement of Defendant's residence in which law enforcement discovered marijuana plants.[2]

---

[1] Defendant's misdemeanor conviction was in 1996, and the parties dispute whether the relationship between the Defendant and the victim of his 1996 criminal conduct is sufficient to support that his 1996 misdemeanor was a "misdemeanor crime of domestic violence" within the meaning of 18 U.S.C. § 922(g)(9).

[2] The government advised the Court that, "[a]s for evidence concerning the defendant's possession of marijuana plants and his harassment of DeKalb County Police Officer Mark Taylor, the government does not intend to offer that evidence in its case in chief."  Gov't.'s Resp. to Def.'s Mot. in Limine [67] at 2-3.  The Court therefore limits this Order to its consideration of whether the witness testimony and related documentary evidence are admissible.

Defendant's motion in limine specifically concerns testimony of and documentary evidence related to five witnesses. The testimony at issue concerns the Defendant's conduct on or before January 24, 2007. The five witnesses fall into two logical categories. The first category consists of three individuals, Angela Hampson, Jean Randolph, and Dr. Joann Thierry, each of whom lived in the immediate vicinity of the Defendant's home.

The government intends to call these witnesses to testify about the Defendant's conduct before the January 24, 2007 purchase of the shotgun at issue in this case. They would be called to testify that from late November 2006 through December 2006, Defendant acted hostilely toward them, including shouting at them in a belligerent and hostile manner, jumping out from behind a tree and shouting, blocking the path of pedestrians and on one occasion blocking one of the women from leaving her driveway in her car, shaking his fist in their direction, calling them on the phone late at night and directing profanity toward them, attaching two notes with Bible verses on one witness' door which the witness felt were threatening,[3] and installing bright lights that he directed at their residences at night. They will further testify that while they could not understand what the

---

[3] The government does not intend to introduce the content of the notes.

Defendant had shouted to them, the manner in which he spoke to them was aggressive. They each will also testify they were not directly threatened by the Defendant and he did not refer to guns or other weapons, but that they felt threatened by the Defendant's conduct and the manner in which he spoke. Ms. Hampson and Ms. Randolph will testify they felt Defendant's conduct required them to apply for a restraining order against him from the DeKalb County Superior Court. Following a hearing at which the Defendant attended, a restraining order, and later a permanent protective order, were issued by the DeKalb County Superior Court.

    The second category of witnesses consist of two of Defendant's acquaintances who work at a Chevron gas station in Defendant's neighborhood. The first acquaintance is Robert Hunter. He would testify that in January 2007 he conversed with the Defendant and Defendant asked about firearms. He would testify also that Defendant asked what sort of firearm would be best for shooting a person. Defendant allegedly stated that his neighbors had sought a restraining order against him, and if they put him in jail, when he got out he intended to go "hunting." Another acquaintance, Phillip Osborne, would testify that he had a conversation with the Defendant on or about January 24, 2007. During that

conversation, Defendant showed him a shotgun he had purchased.

Mr. Osborne reported to Mr. Hunter that Defendant had bought a gun, and Mr. Hunter called the police. Defendant was subsequently confronted by law enforcement personnel and asked whether he had a gun. Defendant admitted that he did and directed the police to where it was located in his house.

On March 25, 2008, the Court heard arguments on the Defendant's motion in limine.

## II.   DISCUSSION

The government seeks to introduce the testimony discussed above to show the Defendant's motive and intent in acquiring a firearm, specifically for use to threaten and possibly harm his neighbors. The Government argues:

> The [] challenged evidence will show that some of
> defendant's neighbors [Ms. Hampson, Ms. Randolph and
> Dr. Thierry] were prompted to seek protective orders
> from DeKalb State Court due to Defendant's harassing
> and intimidating conduct toward them. The issuance of
> the protective orders motivated Defendant to purchase
> the firearm at issue in this case, as a means of retaliating
> against his neighbors. This evidence serves to
> corroborate and explain the testimony of other witnesses
> [Mr. Hunter and Mr. Osborne] who are expected to
> testify that the defendant told them he planned to obtain a
> firearm to retaliate against his neighbors, and that he later

showed them the shotgun he purchased.[4]

Gov't.'s Resp. to Mot. in Limine [67] at 2. The government claims Defendant's motive and intent is probative of whether Defendant knowingly possessed the shotgun at issue.

Counsel for the Defendant represented to the Court at the March 25, 2008 hearing that the evidence is undisputed that the Defendant admitted he possessed the shotgun when confronted by law enforcement officials, and the Defendant will stipulate at trial that he possessed the weapon. Def.'s Reply to Gov't.'s Resp. to Mot. in Limine [80] at 3. Against this backdrop, the Court evaluates the testimony of these five witnesses under Rules 401 and 403 of the Federal Rules of Evidence.

The government contends the testimony of these five witnesses is probative of whether Defendant "knowingly" possessed a firearm, the first element of the charge in the indictment.[5] "Knowing" possession is an essential element of a

---

[4] The government argued at the hearing on this motion on March 25, 2008 that the only statements made by the Defendant were to Mr. Hunter. Defendant apparently asked Mr. Hunter what kind of gun was best for shooting people, that a restraining order had been entered against him, and if "they" tried to put him in jail he intended to go "hunting." The Defendant only showed the gun to Mr. Osborne.

[5] "'Relevant evidence'" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid.

6

charge under 18 U.S.C. § 922(g).  <u>United States v. Jernigan</u>, 341 F.3d 1273, 1279 (11th Cir. 2003).  "Knowing possession" may be proven either by showing that the defendant "actually" possessed the firearm, or by showing that he "constructively" possessed the firearm.  <u>United States v. Gonzalez</u>, 71 F.3d 819, 834 (11th Cir. 1996); <u>United States v. Winchester</u>, 916 F.2d 601, 605 (11th Cir. 1990).  In cases where constructive possession is alleged, "the person must have both the intent and power to exercise dominion and control over the firearm."  <u>Gonzalez</u>, 71 F.3d at 834 (internal citation and quotation marks omitted).

     The government first argues that it is entitled to introduce evidence of the Defendant's intent to exercise dominion and control over the firearm by introducing evidence that the Defendant sought to acquire a firearm in response to his neighbors' application for a restraining order against him.  Gov't.'s Resp. to Def.'s Mot. in Limine [67] at 3.  That is, the government contends it is entitled to prove the Defendant's motive in acquiring a gun in order to prove his "knowing" possession of the gun at issue here.  Transcript of Pretrial Conference Hearing (Mar. 25, 2008) ("Hr'g Tr.") at 8, 11, 19-21.  The government specifically wants to show the Defendant acquired the weapon for the purpose of using it to retaliate

---

401.

against his neighbors.  Id. at 8-15.

The Defendant's alleged motive in this case is only minimally probative of whether he "knowingly possessed" the firearm.  The uncontested facts in this case are that the Defendant exercised and admitted actual dominion and possession of the firearm and that the Defendant will not at trial contest actual possession of the gun.  His motive in acquiring the gun simply is not materially-probative of whether Defendant "knowingly possessed" the weapon.  The testimony of the first group of witnesses is particularly irrelevant on this issue.  They will not testify that Defendant directly threatened them with the gun or that they ever saw the Defendant with the gun; they simply would testify that they perceived the Defendant's conduct as threatening to them and that they sought a court to restrain the Defendant's conduct.  Indeed, the government acknowledges that their testimony is not independently relevant on the possession or motive issue and is offered only to allow the jury to interpret the comments Defendant made to Mr. Hunter to show Defendant's motive to acquire a gun to retaliate against his neighbors.

Even if the testimony of Ms. Hampson, Ms. Randolph and Dr. Thierry was probative of an issue in this case, Federal Rule of Evidence 403 requires the Court

8

to determine if unfair prejudice substantially outweighs its probative value.[6]  The Court concludes that Rule 403 requires exclusion of the evidence.  The nature of the evidence the government wants to introduce in this case is troubling.  The testimony of these three neighbor witnesses presents a special concern.  This is a gun possession offense based on the Defendant's 1996 plea of guilty to an alleged misdemeanor conviction for a crime of domestic violence.  To offer in this case that the possession of the gun was for the purpose of at least threatening, and perhaps perpetrating, violence against these three neighbors presents a genuine risk of causing the jury to focus on the Defendant's alleged intention to inflict harm on others.   Since the Defendant is not charged with harming or threatening to harm any of these witnesses, the focus of this case ought to be whether Defendant had been convicted twelve years ago of an offense that made it illegal in 2007 for him to possess a firearm.  The testimony of these witnesses presents a real and substantial danger of undue prejudice to the Defendant.  In short, the Court finds that the testimony of these three witnesses has little if any probative value and that

---

[6] Federal Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

any probative value is substantially outweighed by the danger of unfair prejudice.

In its Trial Brief, the government advances an additional admissibility argument. The government cites several cases for the proposition that it is entitled to introduce evidence of the testimony of all five of these witnesses because, in the aggregate, the testimony "'concerns the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime, or forms an integral and natural part of the an account of the crime, or is necessary to complete the story of the crime for the jury.'" Gov't.'s Trial Br. [63] at 5 (quoting United States v. Smith, 122 F.3d 1355, 1359 (11th Cir. 1997)). In support of this argument, the Government relies on United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992), United States v. Boston, 249 Fed. App'x 807, 808-09 (11th Cir. 2007), United States v. Thomas, 242 F.3d 1028, 1031-33 (11th Cir. 2001), and United States v. Lindsey, 482 F.3d 1285, 1294 (11th Cir. 2007). The Court's careful reading of these cases shows that they generally do not lend sufficient support to the introduction of the testimony of the three neighbor witnesses. In none of the cases cited by the government did the defendant admit to possessing the firearm at issue, and the courts admitted evidence of past acts, motive, or intent

in order for the jury to infer that the defendant knowingly possessed a weapon.[7] It is important to note as well that in the cases cited by the government, evidence of other acts, intent, or crimes was <u>directly</u> linked to gun possession (i.e., cocaine

---

[7] In <u>Fortenberry</u>, the defendant was charged with possession of a firearm used to commit a murder. <u>Fortenberry</u>, 971 F.2d at 719. The firearm was never recovered. The Court allowed evidence of the murders to show defendant possessed the firearm used to commit them. That is, the evidence of the murder was essential to show the gun possession offense and to connect defendant to the gun that was the subject of the charge. <u>Id.</u> at 721.

In <u>Boston</u>, the Court allowed evidence that the gun which defendant was charged with possessing had been used by the defendant to commit previous crimes. <u>Boston</u>, 249 Fed. App'x at 808. The District Court found that the evidence was probative of his possession of the gun at issue at trial.

In <u>Thomas</u>, the defendant took the position at trial that the rifles at issue were not his and he had not been aware of their presence. <u>Thomas</u>, 242 F.3d at 1031. The Court admitted evidence that defendant transacted in narcotics at the time he possessed the firearm as probative of whether Defendant knowingly possessed the rifles. <u>Id.</u>

In <u>Lindsey</u>, the Court allowed evidence of the defendant's plans to commit a bank robbery in a case were defendant was apprehended with three other suspects outside of a bank. <u>Lindsey</u>, 482 F.3d at 1294. The Court found that evidence of the intent to rob a bank was inextricably intertwined with the defendant's knowing possession of a firearm and ammunition. <u>Id.</u>

In this case, in contrast, the Defendant admits to possession of the gun. Although the government is entitled to prove its case, <u>Old Chief v. United States</u>, 519 U.S. 172, 186-87 (1997), the testimony of these three witnesses has very minimal probative value on the possession issue, and its prejudicial value is great. Additionally, while motive or intent may have higher probative value in cases where the defendant denies possession – in order for the jury to infer possession from a defendant's motive to have a gun – this case presents the opposite situation. The jury does not need to infer possession from motive when the Defendant admits possession.

distribution, bank robbery, murder). Defendant in this case specifically admits possession of the gun, and the proposed evidence is related to that possession only by inference – i.e., the Defendant is not alleged to have committed any acts of violence with the gun or to have used it in any manner. For the same reasons explained above, the minimal relevance of the testimony of the three neighbors is substantially outweighed by the prejudicial character of their testimony.[8]

While these cases do not persuade the Court that the incidents and beliefs of Hampson, Randolph and Thierry are admissible to show the element of "knowing" possession, they support that the government should be allowed to introduce the testimony of Messrs. Hunter and Osborne. The government is entitled to describe a complete picture of the Defendant's alleged offense. Old Chief, 519 U.S. at 186-87. The testimony of Messrs. Hunter and Osborne offers direct evidence of Defendant's actual possession of the firearm which he is charged with illegally possessing. Defendant told Mr. Hunter he wanted to purchase a gun, and

---

[8] For the same reasons for which the Court excludes the testimony of Hampson, Randolph, and Thierry, the Court also excludes documentary evidence related to that testimony, specifically police reports and handwritten statements made by those witnesses, and any documents related to the witnesses' proceedings in the DeKalb County Superior Court, including the protective and restraining orders.

Defendant actually possessed the shotgun in Mr. Osborne's presence.  Mr. Hunter also will be permitted to testify regarding statements made by Defendant about his purpose in wanting to acquire the gun.

While these statements are prejudicial, especially to the extent they refer to Defendant's desire to "hunt" neighbors who might have him put in jail, the prejudicial testimony is "inextricably intertwined" to the short statements Defendant made about his plan to acquire and possess the weapon.  See Fortenberry, 971 F.2d at 721; Thomas, 242 F.3d at 1031.  The entire statements are relevant to the element of knowing possession, and they will complete the story of why law enforcement confronted the Defendant – specifically, that Messrs. Hunter and Osborne feared the Defendant's possession of a weapon and thus reported it to law enforcement.  The prejudice inherent in this testimony does not substantially outweigh its probative value; and, in any event, this prejudice can be minimized by a limiting instruction that the jury may consider the Defendant's statements to Messrs. Hunter and Osborne only in connection with his ultimate knowing possession of the firearm and that they may not consider any suspected use of the gun in determining whether the Defendant is guilty of the offense charged.  E.g.,

Fortenberry 971 F.2d at 721.[9]

### III. CONCLUSION

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Motion in Limine [64] is **GRANTED IN PART** and **DENIED IN PART**.  The motion is granted as to the testimony of Ms. Hampson, Ms. Randolph, and Dr. Thierry, and as to documentary evidence related to the testimony of Hampson, Randolph, and Thierry, and denied with respect to the testimony of Mr. Hunter and Mr. Osborne.

**SO ORDERED** this 27th day of March 2008.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[9] Because the Court will admit the testimony of Messrs. Hunter and Osborne, the Court also finds that the testimony of Ms. Hampson, Ms. Randolph and Dr. Thierry would be cumulative and thus should be excluded under Federal Rule of Evidence 403.