**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **1:07-cv-074-WSD** |
| **PHILLIP MARION CARY,** | |
| **Defendant.** | |

## OPINION AND ORDER

This matter is before the Court on Defendant Phillip Marion Cary's ("Defendant") Preliminary Motion to Dismiss Indictment Based on Statute Being Void for Vagueness [86], Supplement to Motion to Dismiss [94], and Motion to Continue Trial [87].

## I.    BACKGROUND

Defendant is charged in a one-count indictment with illegal possession of a firearm.  Specifically, the indictment alleges that, after having been convicted of a misdemeanor crime of domestic violence, Defendant knowingly possessed a firearm that had been transported in interstate commerce.  The prior misdemeanor offense was a 1996 conviction for simple battery and pointing a pistol.  The parties dispute whether the relationship between Defendant and the victim of the

misdemeanor offense is a qualifying domestic relationship under the statute which Defendant is being prosecuted, and that issue will be resolved at trial. Trial is specially set to begin on March 31, 2008.

A pretrial conference was held on March 25, 2008. During the conference, the Defendant stated for the first time his belief that the statute under which he is indicted is void for vagueness. Defendant has since filed a Preliminary Motion to Dismiss, a Supplement to the Motion to Dismiss, and a Motion to Continue Trial.

## II.   DISCUSSION

A.   Motion to Dismiss

Defendant has been indicted under 18 U.S.C. § 922(g)(9), which makes it unlawful for any person who has been convicted in any court of a misdemeanor crime of domestic violence to knowingly possess a firearm which has been transported in interstate commerce. 18 U.S.C. § 921(a)(33)(A) defines a misdemeanor crime of domestic violence to be an offense that:

(i) is a misdemeanor under Federal, State, or Tribal law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent,

or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim[.]

18 U.S.C. § 921(a)(33)(A).  The Government asserts that there is sufficient evidence to satisfy a conviction that Defendant was either cohabiting with the victim as a spouse or that he was a person similarly situated to a spouse. Defendant claims that the statute's application to those "similarly situated to a spouse" is unconstitutionally vague so as to render it facially void.

Defendant notes that neither Section 922(g)(9) nor Section 921(a)(33) define the meaning of "similarly situated to a spouse."  The Defendant also notes these sections do not explain how one similarly situated to a spouse differs from a current or former spouse or from a person who is cohabiting or has cohabited with the victim as a spouse.  Finally, the Defendant argues that the provision "similarly situated to a spouse" is unconstitutionally vague because it fails, in context with the rest of the statute, to define the criminal offense with sufficient definiteness.

The lack of any statutory definition does not make the statute so vague that "persons of common intelligence must necessarily guess at its meaning and differ as to its application."  Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926).  In construing a statute, courts look first for the plain meaning of the text, looking at

the language itself, the specific context in which the language is used, and the broader context of the statute as a whole.  United States v. Barnes, 295 F.3d 1354, 1366 (D.C. Cir. 2002).  "If the language of the statute has a plain and unambiguous meaning, our inquiry ends so long as the resulting statutory scheme is coherent and consistent."  Id. (internal citations omitted).

Several circuit and district courts have directly addressed the vagueness issue the Defendant raises here.  In Buster v. United States, the defendant appealed the denial of his motion to vacate or set aside his guilty plea for illegal possession of a firearm, arguing in part that a "live-in girlfriend" did not qualify as a person similarly situated to a spouse.  447 F.3d 1130, 1133 (8th Cir. 2006).  The Eighth Circuit affirmed the district court's denial of defendant's motion, agreeing with both the First and Fifth Circuits, that "abuse perpetrated on a live-in girlfriend is domestic abuse committed 'by a person similarly situated to a spouse' for purposes of sections 922(g)(9) and 921(a)(33)(A)(ii)."  Id.  See also United States v. Denis, 297 F.3d 25, 31 (1st Cir. 2002); United States v. Shelton, 325 F.3d 553, 563 (5th Cir. 2003).

In Shelton, the victim had been the defendant's live-in girlfriend for only two months at the time of the assault.  The Fifth Circuit rejected Shelton's claim

that, because the phrases "cohabit as a spouse" and "similarly situated to a spouse" are undefined, the evidence was insufficient to establish that the victim was similarly situated to a spouse.  The court held: "'Live-in girlfriend' indicates living together with the implication that the two were having sexual relations.  Accordingly, Shelton's admission was sufficient evidence to prove the victim was similarly situated to a spouse in the context of this statute."  Shelton, 352 F.3d at 563.

The defendant's admission of the characterization of the relationship is only one piece of evidence the Government can use in order to satisfy its burden of proving that the relationship qualifies under the statute.  In White v. Dep't of Justice, the Federal Circuit held that the defendant was a person similarly situated to a spouse under section 921(a)(33)(A)(ii) where the defendant and victim cohabited as boyfriend and girlfriend for ten months, and thereafter maintained an intermittent relationship together for several months, in which the defendant stayed "up to 5 days/nights a week with her" although he maintained a separate residence.  328 F.3d 1361, 1369 (Fed. Cir. 2003).  The court noted certain details tended to show that the nature of the relationship was as a spouse or at least similar to a spousal relationship.  These relevant details include: "expectations of fidelity and

monogamy, shared expenses, shared household responsibilities, social activities in common, and discussions about having children."  Id.[1]

There is no requirement that the defendant and victim ever lived together.  In White, at the time of the assault on the victim, the two had separate residences and were no longer living with other.  The Eighth Circuit's decision in United States v. Cuervo is even more direct on this point.  There the court found there was sufficient evidence to support the defendant's conviction under section 922(g)(9) where evidence showed defendant and victim simply "shared an intimate personal relationship."  354 F.3d 969, 997-98 (8th Cir. 2004), vac'd on other grounds sub nom. Schoenauer v. United States, 543 U.S. 1099 (2005).  In that case, defendant had previously been convicted of assaulting his secretary, with whom he had

---

[1] In United States v. Costigan, 18 Fed. App'x 2 (1st Cir. 2001), the First Circuit affirmed the district court's use of a non-exhaustive list of factors in determining whether the government had proved defendant and victim were cohabiting as spouses, including: "length of the relationship; shared residence as indicated by spending the night and keeping one's belongings at the residence; intimate relations; expectations of fidelity and monogamy; shared household duties; regularly sharing meals together; joint assumption of child care; providing financial support; moving as a family unit; joint recreation and socialization; and recognition of the live-in relationship by family and friends as indicated by visits to the residence."  Id. at 5.  The Court notes Costigan specifically addressed whether the defendant's relationship qualified as cohabiting as a spouse, not similarly situated to a spouse.

engaged in a long-term extramarital affair.  The conviction was affirmed even

though the defendant was still married and lived with his wife.  The evidence

showed, however, that the defendant and his victim stayed together periodically at

an apartment the defendant kept.  The court noted that "[a] common read of the

statute would alert a person of ordinary intelligence that the phrase 'similarly

situated to a spouse' is meant to include assault perpetrated against those who are

not spouses, yet share their defining characteristics."  <u>Id.</u> at 998.  <u>See also</u> <u>Eibler v.</u>

<u>Dep't of Treasury, Bureau of Alcohol, Tobacco and Firearms, et al.</u>, 311 F.Supp.2d

618 (Jan. 30, 2004 N.D.Ohio) (finding that even though misdemeanant and victim

had not been living together at the time of the assault, fact that the two had a long-

term close and personal relationship was sufficient to qualify as a domestic

relationship under Section 921(a)(33)(A)(ii)).

The Defendant's contention that he has no reasonable way of knowing

whether the statute is applicable to him is contradicted by relevant case law.  The

courts that have addressed this issue have consistently rejected defendants'

argument that section 921(a)(33)(A)(ii) is unconstitutionally vague.  In <u>United</u>

<u>States v. Barnes</u>, the defendant argued that the relationship requirement itself is

unconstitutionally vague because a defendant convicted of simple assault could not

be sure whether he or she might later be held to be a guardian of the victim or similarly situated to a spouse, parent, or guardian of the victim.  The District of Columbia Circuit rejected this argument, noting "[w]e would be hard pressed to find an individual of common, or even not so common, intelligence who could not determine whether he was in one of the enumerated relationships when he committed a misdemeanor crime including an element of physical force."  Barnes, 295 F.3d 1354, 1366 (D.C. Cir. 2002), quoting United States v. Smith, 171 F.3d 617, 623 (8th Cir. 1999).  See also United States v. Meade, 175 F.3d 215, 222 (1st Cir. 1999) (finding section 922(g)(9) is not unconstitutionally vague as it is "fair to presume that a misdemeanant will know his relationship with his victim."); Denis, 297 F.3d at 31(holding that because defendant knew that he was convicted of a misdemeanor offense after assaulting his live-in girlfriend, that "is enough to remove him from the class of ordinary and innocent citizens who would expect no special restrictions on the possession of a firearm.") (internal quotations omitted). The Barnes court recognized that alternative interpretations of statutory text "does not by itself establish vagueness."  Barnes, 295 F.3d at 1366.  See also United States v. Thomson, 134 F.Supp.2d 1227, 1230 (D.Utah 2001) (holding "similarly

situated to a spouse" is not unconstitutionally vague and denying defendant's motion to dismiss), aff'd 354 F.3d 1197 (10th Cir. 2003).

During the pretrial conference, the Government has asserted it has evidence sufficient to prove Defendant was either cohabiting with the victim as a spouse or was a person similarly situated to a spouse.   Specifically, the Government has indicated the evidence will show the Defendant and the victim spent almost every night at the Defendant's home, even though the victim did own a separate home; that she kept many of her personal belongings in the Defendant's home; that she came and went from the Defendant's home as though it was her own home as opposed to at the invitation of the Defendant in each particular instance; that the two were sexually intimate; and that the Defendant had proposed and the two were engaged.

The Defendant is only challenging the vagueness of "similarly situated to a spouse."   Based on the existing case law from a variety of circuit courts, Defendant's claim that the statute is void for vagueness is not supported by any of the cases that address this issue.   Defendant's fallback argument is that the legislative history supports his interpretation of the statute.   Courts, though, consistently have found that the statute's language is plain and clear and reliance

on legislative history is unnecessary and inappropriate.  A review of the legislative history simply is not necessary.  However, even when the legislative history of this statute is examined, it too discredits Defendant's argument.

Defendant cites an out-of-context and fictitious illustration offered by Senator Lautenberg to argue Congress intended a "similarly situated as a spouse" relationship means the "functional equivalent" of a marriage.  The citation of this small bit of legislative history is misleading.  The legislative history clearly shows "Congress intended to reach domestic relationships of all sorts–legal, common law or otherwise."  United States v. Costigan, 2000 WL 898455, *3 (June 16, 2000 D.Me.) (noting that Congress was reaching broadly and not limiting the statute to offenses occurring in legal or common law marriages by applying the statute to a "former spouse" and "even to one who is 'similarly situated to a spouse. . . .'").  The statute's sponsor noted that "[e]ven after a split, the individuals involved, often by necessity, have a continuing relationship of some sort."  142 Cong. Rec. S10377-01.  This does not support Defendant's contention that Congress intended to protect only those crimes perpetrated against an actual or common-law spouse.  See also United States v. Heckenliable, 2005 WL 856389 (April 13, 2005 D.Utah), aff'd. 446 F.3d 1048 ("In dropping the word 'cohabiting' from the final clause,

Congress apparently intended to sweep into the statute relationships that did not

involve cohabitation.  Congress was no doubt concerned that some persons, while

not habiting, might nonetheless remain in such frequent contact with each other

that a risk of deadly violence would exist if firearms were present.").

Both the statute's plain language and the legislative history support the

conclusion that "similarly situated to a spouse" was intended by Congress to cover

misdemeanants "who are not in a spousal or parental relationship" but are in "the

myriad [of] close personal relationships that could result in recurring

conflicts–conflicts that could escalate to deadly violence if a previously convicted

misdemeanant had access to a firearm."  Id.  In Heckenliable, the court found that

the government had provided sufficient evidence from which a reasonable jury

could determine that defendant was "similarly situated to a spouse," namely, that

the defendant and the victim had an intimate personal relationship and that they

were living together for "about a month."  Id. The Government has presented

sufficient evidence for a jury to determine whether Defendant and the victim were

in a qualifying domestic relationship.[2] [3] [4]

---

[2] The Court's finding today does not relieve the Government of its burden to
prove that the Defendant had a domestic relationship as defined in section
921(a)(33)(A)(ii) in order to convict under section 922(g)(9).  White, 328 F.3d at

B.   Motion for Continuance

Pursuant to 18 U.S.C. § 3161(h)(8), the Court may upon the Defendant's request continue the trial to best serve the interest of justice and the interests of the Defendant and the Government in a speedy trial.  The Court considers several factors, including "whether the failure to grant such a continuance . . . would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice," and whether failure to continue "would deny counsel for the defendant . . . reasonable time necessary for effective preparation, taking into account the exercise of due diligence."  Id. at § 3161(h)(8)(b)(i), (iv).  Defendant

1367 n. 2.  See also Cuervo, 354 F.3d at 998 (if evidence shows victim shared "an intimate personal relationship" with defendant, jury is free to determine, as a factual matter, that victim was in a position similar to a spouse); United States v. Heckenliable, 2005 WL 856389 (April 13, 2005 D.Utah), aff'd. 446 F.3d 1048 (denying defendant's motion in limine to exclude evidence of his prior conviction and finding that the government had proffered sufficient evidence from which a reasonable jury could find that defendant either cohabited "as a spouse" of the victim of his prior crime or that defendant was "similarly situated to a spouse" of the victim.).

[3] Nor has Defendant shown that failure to grant a continuance would make this proceeding impossible, result in a miscarriage of justice, or deny counsel reasonable time for effective preparation.

[4] The Court notes that the Eleventh Circuit has not addressed this issue.  The uniform reasoning and conclusions reached by other circuits is sufficient authority to support denial of Defendant's motion to dismiss.

argued a continuance is necessary because "the Government only recently announced" the theories on which it is prosecuting its case, and Defendant "has not had adequate time to research or brief this important constitutional issue."  Motion to Dismiss at p. 1 n. 1.  The Court disagrees that Defendant did not have adequate time to address this issue to the Court.  The Court also disagrees that a continuance is appropriate.

The Court notes that the charge on which the Defendant will be tried was returned in an indictment issued on March 6, 2007.  Thus, Defendant has known for more than a year that the Government seeks to show that Defendant was convicted in 1996 of the misdemeanor which the Government contends constituted a crime of domestic violence.  On April 12, 2007, Defendant moved to dismiss the indictment on the grounds that the statute under which he was convicted in 1996 did not have as an element that the crime was one constituting domestic violence. The Court denied this motion in its order issued on January 4, 2008.  The fact the Motion to Dismiss was filed shows Defendant's long-standing intention to attack whether his 1996 conviction qualifies as a domestic violence crime.  That Defendant was prepared to challenge the "person similarly situated to a spouse of the victim" clause within 18 U.S.C. § 921(a)(33)(A), was evident at the pretrial

conference conducted on March 25, 2008.  The Defendant stated he had already researched this issue, did not need a continuance to research it further, but argued the Court needed to address his motion before the trial proceeded.  From the argument presented by counsel at the pretrial conference, it was obvious the Defendant has intended to raise this issue for some time.[5]

The Court has provided Defendant and the Government time to brief this issue.  In fact, the Defendant filed a preliminary brief on the issue on March 25, 2008, and on Thursday, March 27, 2008, counsel for Defendant advised the Court he had completed additional research and would file an additional memorandum of authorities on March 28, 2008.  A supplemental brief was filed by Defendant today.  Defendant did not, on March 27, 2008 nor today, request additional time to research or present a further submission for the Court's consideration.

After the pretrial conference on March 25, 2008, the Court began conducting its own independent research on the issue raised by the Defendant, including reviewing the legal authorities that are available from the various federal courts

---

[5] The Court believes Defendant could have raised these arguments well before the pretrial conference.  He did not need the Government's clarification of the relationship, under Section 922(g)(33)(A), that the Government will contend qualifies as a misdemeanor as a crime of domestic violence before he could raise his constitutional question.

that have addressed the vagueness issue.  The Court's research has been extensive and it has had ample time to thoughtfully consider the matters raised by the Defendant.  The issue raised by Defendant is not complex and, it has been addressed by a variety of federal courts on a number of previous occasions.  The Court simply does not need additional time to consider the Defendant's motion and the interests of justice require that this case begin on Monday, March 31, 2008, as scheduled.

## III.    CONCLUSION

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Indictment [86] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Continue Trial [87] is **DENIED**.  Trial shall proceed as scheduled on Monday, March 31, 2008, at 9:30 a.m.

**SO ORDERED** this 28th day of March, 2008.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE